

# IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO. 19-317 |
| v. | : | DATE FILED 5/31/2019 |
| GERALD ALAN GOSS | : | VIOLATIONS: |
| | | 18 U.S.C. §§ 1341, 3559(g) (mail fraud – |
| | : | 6 counts) |
| | | 18 U.S.C. §§ 1343, 3559(g) (wire fraud – |
| | : | 6 counts) |
| | | 18 U.S.C. § 2 (aiding and abetting) |
| | : | Notice of Forfeiture |

## I N F O R M A T I O N

### COUNTS ONE THROUGH SIX

**THE UNITED STATES ATTORNEY CHARGES THAT:**

At all times relevant to this Information:

1.     Amazon.com, Inc. ("Amazon") was a corporation with its headquarters in

Seattle, Washington, engaged in the business of electronic commerce. Amazon sold merchandise

and provided a platform for third parties to sell merchandise via the Amazon Marketplace

through the Amazon.com website. Purchases initiated from the Amazon.com website were made

via the internet, and both Amazon and those third parties selling through the Amazon

Marketplace shipped the purchased goods via the United States Postal Service ("USPS") AND

private and commercial interstate carriers, including, Federal Express ("FedEx") and United

Parcel Service ("UPS") to the addresses provided by the customers.

2.     Persons who wished to purchase goods sold by Amazon, or third parties hosted by Amazon, registered with Amazon and created an Amazon.com account. The creation of an Amazon.com account required a name, an e-mail address, a delivery address, and a method of electronic payment, such as a credit card, debit card, or gift card.

3.     When an item purchased via the Amazon.com website failed to arrive at the address provided by the customer, or arrived in a defective or damaged condition, Amazon typically provided the customer with a refund or replacement item. Amazon referred to these refunds and replacements as "concessions."

4.     An Amazon.com customer initiating a refund or replacement did so by contacting Amazon.com customer service via phone or online chat. The customer was then required to provide their order number, Amazon.com account information such as email address, name and shipping address, as well as a description of the problem with their order. If a customer claimed that an item did not arrive as reported by the order's tracking information, the Amazon.com customer service representative typically offered a refund or offered to ship a replacement item.

5.     PayPal Holdings Inc. ("PayPal") was a corporation with its headquarters in San Jose, California, engaged in the business of operating a worldwide online payment system that supports online money transfers and serves as an electronic alternative to traditional paper methods of making payment for goods and services. PayPal operated as a payment processor for online vendors and auction sites. Individuals and businesses established PayPal accounts that they could use to make and receive money transfers, including for the purchase or sale of merchandise or services. These PayPal accounts were typically linked to bank accounts at financial institutions from which and into which the PayPal customers could transfer funds.

2

6.      eBay Inc. ("eBay") was a corporation with its headquarters in San Jose, California, engaged in the business of electronic commerce. eBay facilitated consumer-to-consumer and business-to-consumer sales through its website. Individuals and businesses sold products through eBay by posting the items to be sold on eBay's website and offering the items for sale in either an auction format, a fixed price format, a best offer format, or a combination of these formats. Sellers could also create eBay "stores" on the eBay website that would allow the sellers to advertise all of the items they were selling through the eBay website. Purchasers typically paid for the items they bought on eBay using PayPal.

7.      The Neat Company ("Neat") was a corporation with its headquarters in Philadelphia, Pennsylvania, engaged in the business of selling document scanners and providing small business software solutions and cloud-based data and document retention. Neat sold a scanner referred to as the NeatConnect Cloud Scanner with a retail price of approximately $499. NeatConnect Cloud Scanners purchased from authorized retailers were covered by a one-year warranty against defects in materials, workmanship and failure to conform within the manufacturer's published specifications.

8.      NeatConnect Cloud Scanner owners wishing to initiate a warranty claim contacted the company via phone or through Neat's customer support webpage. If Neat's customer service was not able to solve the problem through troubleshooting, a warranty replacement was initiated. The customer was required to provide their name, email address, serial number, proof of purchase and shipping address. Upon receipt of what it believed to be a valid warranty claim, Neat shipped replacement scanners to customers. Neat required that the defective scanner had to be returned by the customer, and provided return shipping instructions to the customer along with the replacement scanner.

3

9.      All NeatConnect Cloud Scanner warranty replacement requests were processed by Neat's headquarters in Philadelphia, Pennsylvania. All NeatConnect Cloud Scanner warranty replacement products were shipped from Neat's warehouse located in La Vergne, Tennessee, via commercial interstate carrier UPS upon receipt by the warehouse of an e-mail wire communication from Neat's headquarters in Philadelphia, Pennsylvania, directing such shipment.

10.      iRobot Corporation ("iRobot") was a company with its headquarters in Bedford, Massachusetts, engaged in the business of designing and selling consumer robots to perform tasks inside and outside the home. iRobot sold a consumer robotic vacuum referred to as the Roomba 980 with a retail price of approximately $899. Roomba 980 Robotic Vacuums purchased from authorized retailers were covered by a warranty guaranteeing the product would be in good working order for a period of one year from the date of purchase.

11.      Roomba 980 Robotic Vacuum owners wishing to initiate a warranty claim must first have registered their Roomba's serial number with an account on iRobot's support website. When the owner of a Roomba 980 Robotic Vacuum contacted iRobot's customer support via phone or chat to report a problem, the iRobot customer service representative verified the name, email address and contact information that was given when the serial number was originally registered, and then attempted to troubleshoot the customer's problem. If iRobot's customer service was not able to solve the problem through troubleshooting, a warranty replacement was initiated. iRobot then shipped a replacement product to its customer, along with a return label so the defective product could be returned to iRobot free of charge.

4

12.     iRobot shipped Roomba 980 Robotic Vacuum warranty replacement products from iRobot's warehouse located in Lancaster, Pennsylvania, via commercial interstate carrier.

## THE SCHEME

13.     Beginning on or about November 9, 2015 and continuing until on or about April 14, 2016, within the Eastern District of Pennsylvania, the Southern District of Texas, and elsewhere, defendant

## GERALD ALAN GOSS

together and with co-schemers known and unknown to the United States Attorney, devised and intended to devise a scheme to defraud and to obtain money and property by means of false and fraudulent pretenses, representations, and promises.

## MANNER AND MEANS

14.     With the knowledge and consent of defendant GERALD ALAN GOSS, Co-Schemer #1 and Co-Schemer #2 knowingly falsely registered domain names.

15.     Co-Schemer #1 and Co-Schemer #2 took steps to prevent the effective identification of themselves as the persons who registered the false domain names, including paying for the domain name registration with Bitcoin and utilizing virtual private network ("VPN") services that provided a level of anonymity for persons when accessing the internet.

16.     Defendant GERALD ALAN GOSS, Co-Schemer #1, and Co-Schemer #2 established email addresses using the false domain names.

17.     Defendant GERALD ALAN GOSS, Co-Schemer #1, and Co-Schemer #2 established new phone numbers that were not directly tied to them by, among other things, purchasing prepaid cellular phones in false names.

5

18.     Defendant GERALD ALAN GOSS, Co-Schemer #1, and Co-Schemer #2 purchased prepaid Amazon gift cards and prepaid debit cards.

19.     Defendant GERALD ALAN GOSS, Co-Schemer #1, and Co-Schemer #2 rented a mailbox at a UPS Store to which they could have merchandise shipped.

20.     Defendant GERALD ALAN GOSS, Co-Schemer #1, and Co-Schemer #2 located vacant homes to which they could have merchandise shipped.

21.     Defendant GERALD ALAN GOSS, Co-Schemer #1, and Co-Schemer #2 used the false email addresses, the new phone numbers, the prepaid Amazon gift cards and debit cards, and the vacant home addresses and the mailbox at the UPS store to establish false Amazon customer accounts in false names and false addresses.

22.     Defendant GERALD ALAN GOSS, Co-Schemer #1, and Co-Schemer #2 purchased and otherwise obtained merchandise from Amazon and other companies using the false Amazon accounts they had created and paid for the merchandise using the prepaid Amazon gift cards and prepaid debit cards.

23.     Defendant GERALD ALAN GOSS, Co-Schemer #1, and Co-Schemer #2 falsely claimed, by placing telephone calls to, sending emails to, and initiating online chats with Amazon and other companies from which they had previously ordered and obtained merchandise, that the merchandise they ordered had never arrived or had arrived damaged, when in fact it had arrived in an undamaged condition.

24.     Defendant GERALD ALAN GOSS, Co-Schemer #1, and Co-Schemer #2, through these false representations, caused Amazon and other companies to ship via USPS or in interstate commerce via commercial interstate carriers, including FedEx, and UPS, multiples of the same item for no additional charge.

6

25.     Co-Schemer #1 and Co-Schemer #2 obtained and ascertained serial numbers for NeatConnect Cloud Scanners, Roomba 980 Robotic Vacuums, and other items that they did not own or possess.

26.     Co-Schemer #1 and Co-Schemer #2 created false receipts showing that they had purchased NeatConnect Cloud Scanners, Roomba 980 Robotic Vacuums, and other items that that had never purchased and did not own.

27.     Co-Schemer #1 and Co-Schemer #2 contacted Neat, iRobot, and other companies and initiated false warranty claims via telephone calls, emails, and online chats by providing legitimate serial numbers for NeatConnect Cloud Scanners, Roomba 980 Robotic Vacuums, and other items that they did not own or possess, as well as false receipts, false names, false email addresses, false shipping addresses, and other false information, and by falsely claiming that they were the owners of the items in question and that the items were not working properly.

28.     Through the false submission of warranty claims to Neat, iRobot, and other companies, Co-Schemer #1 and Co-Schemer #2 caused Neat, iRobot, and other companies to ship via USPS or in interstate commerce via commercial interstate carriers, including FedEx and UPS, to the false addresses they had provided, hundreds of warranty replacement items to which they had no legitimate right.

29.     Co-Schemer #1 and Co-Schemer #2 promised Neat, iRobot, and the other companies with whom they had initiated false warranty claims that they would send back the supposedly broken products, when in fact they never owned the products in question and never shipped back any broken products.

7

30.     Defendant GERALD ALAN GOSS, Co-Schemer #1, and Co-Schemer #2 traveled to the false addresses and the mail box stores they had used as the shipping addresses for the merchandise they obtained by fraud in order to pick up the fraudulently-obtained merchandise.

31.     Defendant GERALD ALAN GOSS, Co-Schemer #1, and Co-Schemer #2 established and obtained PayPal accounts.

32.     Defendant GERALD ALAN GOSS, Co-Schemer #1, and Co-Schemer #2 established eBay accounts linked to PayPal accounts they controlled.

33.     Defendant GERALD ALAN GOSS established an Amazon account in his own name.

34.     Co-Schemer #1 obtained access to an additional Amazon account that could be used to sell fraudulently-obtained merchandise.

35.     Defendant GERALD ALAN GOSS, Co-Schemer #1, and Co-Schemer #2 sold the items that they had fraudulently obtained from Amazon, Neat, iRobot, and other companies by, among other things, listing those items for sale on eBay or through Amazon seller accounts over which they had access and control.

36.     Between on or about November 9, 2015 and on or about February 24, 2016, defendant GERALD ALAN GOSS, Co-Schemer #1, and Co-Schemer #2 sold fraudulently-obtained merchandise totaling approximately $19,864.85 through Amazon accounts over which they had access and control.

37.     Between on or about November 16, 2015 and on or about April 14, 2016, defendant GERALD ALAN GOSS, Co-Schemer #1, and Co-Schemer #2 sold fraudulently-

obtained merchandise totaling approximately $76,060.05 through eBay accounts over which they had access and control.

38. Defendant GERALD ALAN GOSS, Co-Schemer #1, and Co-Schemer #2 shipped via USPS or in interstate commerce via commercial interstate carriers the items they sold through eBay and Amazon.

39. Defendant GERALD ALAN GOSS, Co-Schemer #1, and Co-Schemer #2 transferred the proceeds of their sale of the fraudulent-obtained items from the eBay and Amazon seller accounts they used to PayPal accounts over which they had access and control.

40. During and in furtherance of the scheme, defendant GERALD ALAN GOSS, Co-Schemer #1, and Co-Schemer #2 collectively received at least approximately $95,924.90 from the sale of fraudulently-obtained merchandise.

41. Defendant GERALD ALAN GOSS, Co-Schemer #1, and Co-Schemer #2 equally shared in the profits they earned from their sale of the fraudulently-obtained merchandise.

## MAIL FRAUD

42. On or about each of the following dates, in the Eastern District of Pennsylvania, the Middle District of Pennsylvania, the Western District of Pennsylvania, the Southern District of Texas, and elsewhere, defendant

## GERALD ALAN GOSS

alone and with co-schemers known and unknown to the United States Attorney, for the purpose of executing the scheme described above, and attempting to do so, and aiding and abetting its execution, knowingly caused to be delivered by mail and commercial interstate carriers, according to the directions thereon, the following items:

9

| COUNT | DATE | FROM | TO | DESCRIPTION OF ITEM |
|---|---|---|---|---|
| ONE | January 17, 2016 | Pearland, Texas | Dallas, Pennsylvania | EVGA GeForce GTX 980 Superclocked ACX 2.0 Gaming Graphics Card, sold via eBay and shipped to A.L. via FedEx |
| TWO | February 4, 2016 | Pearland, Texas | Parkesburg, Pennsylvania | Intel Boxed Core 17-6700K 4.00 GHz 8M Computer Processor, sold via eBay and shipped to B.K. via FedEx |
| THREE | February 25, 2016 | Pearland, Texas | Downingtown, Pennsylvania | Synology Disk Station 4-Bay Network Attached Storage, sold via eBay and shipped to V.E. via FedEx |
| FOUR | March 5, 2016 | Pearland, Texas | Dalton, Pennsylvania | EVGA NVIDIA GeForce GTX 890 Ti Hybrid 6GB Graphics Card, sold via eBay and shipped to G.K. via FedEx |
| FIVE | April 4, 2016 | Lancaster, Pennsylvania | Pearland, Texas | Roomba 980 Robotic Vacuum, shipped via UPS |
| SIX | April 10, 2016 | Pearland, Texas | Allegheny, Pennsylvania | USA Model Nikon D7100 24.1 MP DX-Format CMOS Digital SLR Camera, sold via eBay and shipped to J.G. via FedEx |

All in violation of Title 18, United States Code, Sections 1341, 3559(g), and 2.

## COUNTS SEVEN THROUGH TWELVE

## THE UNITED STATES ATTORNEY FURTHER CHARGES THAT:

      1.     Paragraphs One through Twelve of Count One are incorporated here.

### THE SCHEME

      2.     Beginning on or about November 9, 2015 and continuing until on or about April 14, 2016, within the Eastern District of Pennsylvania, the Southern District of Texas, and elsewhere, defendant

### GERALD ALAN GOSS

together and with co-schemers known and unknown to the United States Attorney, devised and intended to devise a scheme to defraud and to obtain money and property by means of false and fraudulent pretenses, representations, and promises.

### MANNER AND MEANS

      3.     Paragraphs Fourteen through Forty-One of Count One are incorporated here.

### WIRE FRAUD

      4.     On or about each of the following dates, in the Eastern District of Pennsylvania, the Middle District of Tennessee, the Southern District of Texas, and elsewhere, defendant

### GERALD ALAN GOSS

alone and with co-schemers known and unknown to the United States Attorney, for the purpose of executing the scheme described above, and attempting to do so, and aiding and abetting its execution, caused to be transmitted by means of wire communication in interstate commerce the signals and sounds described below, each transmission constituting a separate count:

11

| COUNT | DATE | ORIGIN OF WIRE | DESTINATION OF WIRE | METHOD OF WIRE AND DESCRIPTION |
|---|---|---|---|---|
| SEVEN | December 18, 2015 | Philadelphia, Pennsylvania | La Vergne, Tennessee | E-mail from Neat headquarters to Neat warehouse directing shipment of NeatConnect Cloud Scanner to Galveston, Texas in response to false warranty claim #SO3839620 |
| EIGHT | December 18, 2015 | Philadelphia, Pennsylvania | La Vergne, Tennessee | E-mail from Neat headquarters to Neat warehouse directing shipment of NeatConnect Cloud Scanner to Houston, Texas in response to false warranty claim #SO3839677 |
| NINE | February 16, 2016 | Philadelphia, Pennsylvania | La Vergne, Tennessee | E-mail from Neat headquarters to Neat warehouse directing shipment of NeatConnect Cloud Scanner to Pearland, Texas in response to false warranty claim #SO3989245 |
| TEN | April 4, 2016 | Philadelphia, Pennsylvania | La Vergne, Tennessee | E-mail from Neat headquarters to Neat warehouse directing shipment of NeatConnect Cloud Scanner to Pearland, Texas in response to false warranty claim #SO4098117 |

| COUNT | DATE | ORIGIN OF WIRE | DESTINATION OF WIRE | METHOD OF WIRE AND DESCRIPTION |
|---|---|---|---|---|
| ELEVEN | April 7, 2016 | Philadelphia, Pennsylvania | La Vergne, Tennessee | E-mail from Neat headquarters to Neat warehouse directing shipment of NeatConnect Cloud Scanner to Pearland, Texas in response to false warranty claim #SO4108081 |
| TWELVE | April 7, 2016 | Philadelphia, Pennsylvania | La Vergne, Tennessee | E-mail from Neat headquarters to Neat warehouse directing shipment of NeatConnect Cloud Scanner to Houston, Texas in response to false warranty claim #SO4108114 |

All in violation of Title 18, United States Code, Sections 1343, 3559(g), and 2.

## NOTICE OF FORFEITURE

**THE UNITED STATES ATTORNEY FURTHER CHARGES THAT:**

1.     As a result of the violations of Title 18, United States Code, Sections 1341 and 1343 set forth in this Information, defendant

### GERALD ALAN GOSS

shall forfeit to the United States of America any property constituting, or derived from, proceeds traceable to the commission of such offense, including but not limited to $31,974.96 in United States currency (money judgment).

2.     If any of the property described above, as a result of any act or omission of the defendant:

a.     cannot be located upon the exercise of due diligence;

b.     has been transferred to, sold to, or deposited with a third party;

c.     has been placed beyond the jurisdiction of this Court;

d.     has been substantially diminished in value; or

e.     has been commingled with other property which cannot be divided without difficulty;

it is the intention of the United States, pursuant to Title 28, United States Code, Section 2461(c) incorporating Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendant up to the value of the property subject to forfeiture.

All pursuant to Title 18, United States Code, Section 981(a)(1)(C), and 28 U.S.C.

Section 2461.

for **WILLIAM M. McSWAIN**
**UNITED STATES ATTORNEY**

15